## J. F. LANSING ET AL. v. CITY OF LINCOLN ET AL.

### [FILED JULY 1, 1891.]

**Cities of First Class:** ALLEY PAVING: ASSESSMENTS: SPECIAL BENEFITS. The alley in a city block is for the special benefit of the several lots abutting thereon, and under the provisions of subdivision 63, section 69, chap. 13a, Compiled Statutes, not to exceed one-half of the cost of paving thereon opposite each lot may be assessed upon such lot. If a lot has been subdivided, then the assessment is to be made upon the several subdivisions upon an equitable and just basis in proportion to the benefits received. It is not necessary that the subdivision actually abut on the alley in order to be liable for a portion of the tax. The question of the amount of special benefits is one of fact to be determined from the evidence.

APPEAL from the district court for Lancaster county. Heard below before CHAPMAN, J.

*Chas. L. Hall,* for appellants, cited: *Agnes v. Newark,* 37 N. J. L., 415; *Bogert v. Elizabeth,* 27 N. J. Eq., 568; *State v. Newark,* 3 Dutch. [N. J. L.], 191; *Omaha v. Schaller,* 26

Neb., 526; *Tide-water Co. v. Costar,* 3 C. E. Green [N. J.], 518; *Morrison v. Hershire,* 32 Ia., 271; *Wolf v. Keokuk,* 48 Id., 129; *Springfield v. Green,* 120 Ill., 275–6; *Hanscom v. Omaha,* 11 Neb., 42, 43; *Lembeck v. Jersey City,* 3 Stew. [N. J. Eq.], 554; *Washington Ave.,* 69 Pa. St., 352; *Hartford v. West Middle Dist.,* 45 Conn., 462; *Dyar v. Farm Village Corp.,* 70 Me., 527; *Chicago v. Larned,* 34 Ill., 203; *Johnson v. Milwaukee,* 40 Wis., 316; *State v. Elizabeth,* 8 Vroom [N. J.], 142.

*E. P. Holmes* and *J. R. Webster, contra,* cited : *Springfield v. Green,* 120 Ill., 269; *Williams v. Mayor,* 2 Mich., 560; *People v. Mayor,* 4 N. Y., 419; *Nichols v. Bridgeport,* 23 Conn., 189; *Wray v. Pittsburg,* 46 Pa. St., 365; *Burnes v. Atchison,* 2 Kan., 454; *St. Joseph v. O'Donoghue,* 31 Mo., 345; *Burnett v. Sacramento,* 12 Cal., 76; *Yeatman v. Crandall,* 11 La. Ann., 220; *Maloy v. Marietta,* 11 O. St., 636; *State v. Dean,* 23 N. J. L., 335; *Bond v. Kenosha,* 17 Wis., 284; *City of Fairfield v. Ratcliff,* 20 Ia., 396; *McGehee v. Mathis,* 21 Ark., 40; *Palmer v. Stumph,* 29 Ind., 329; *Dorgan v. Boston,* 12 Allen [Mass.], 234; Cooley, Tax., 449–50; Cooley, Const. Lim., 449, 508; *Weeks v. Milwaukee,* 10 Wis., 258; *Touzalin v. City,* 25 Neb., 817; *Kittle v. Shervin,* 11 Id., 75–7; *B. & M. R. Co. v. Seward,* 10 Id., 216; Welty, Assessments, secs. 302, 314, 320; *Burk v. Altshcul,* 6 Pac. Rep. [Cal.], 393; *In re Lowden,* 88 N. Y., 553; *In re Merriam,* 84 Id., 596; *Cuming v. Grand Rapids,* 46 Mich., 159; *Beniteau v. Detroit,* 41 Id., 116; *Strowbridge v. City,* 8 Or., 79.

MAXWELL, J.

This is an appeal in equity from the district court of Lancaster county. It is alleged in the petition that "The said plaintiff James F. Lansing is the owner in fee simple and in possession of lots 'A,' 'B,' and 'E' of subdivision of lots 1 and 2 in block 40, in said city of Lincoln, Lancas-

ter county, Nebraska; the said plaintiff Adeline R. School-
craft is the owner in fee simple and in possession of lot 'C'
of subdivision of lots 1 and 2 in block 40, in said city of
Lincoln; the said plaintiff Mary Geiser is the owner in
fee simple and in possession of lot 'D' in said subdivision
of lots 1 and 2 in said block 40, in said city of Lincoln;
that said lots 1 and 2 in said block 40, in said city of Lin-
coln, were originally each fifty feet in width and 142 feet in
in depth, and were bounded on the north by 'P' in said
street in said city, and on the south by the alley in said
block 40; that prior to the 20th day of September, 1880,
said original lots 1 and 2 in said block 40 had been, by
Theodore S. Ganter, the owner, sold out in parcels by
metes and bounds at different times to different parties;
that on said 20th day of September, 1880, the then owners
of said different parts and parcels of said original lots 1
and 2 did, in accordance with the provisions of section 104
of an act of the legislature of Nebraska, entitled 'An act
to provide for the organization, government, and powers
of cities and villages,' approved March 1, 1879, under
which said act said defendant was then organized and doing
business, make and execute a plat of the subdivision of
said lots 1 and 2 in said block 40, and on said 20th day of
September, 1880, filed the same for record in the office of
the clerk of said Lancaster county, and said plat thereby
became a part of the recorded plat of said city of Lincoln,
defendant herein, a copy of which said plat of the said sub-
division of said lots 1 and 2 in said block 40 is hereto at-
tached, marked 'Exhibit A,' and made a part of this peti-
tion; that said lots 'A' and 'B,' belonging to said Lansing,
plaintiff, and said lot 'C,' belonging to said Schoolcraft,
plaintiff, are each fifty-five feet north and distant from the
north line and nearest point of said alley in said block 40;
that said lot 'E,' belonging to said plaintiff Lansing, and
lot 'D,' belonging to said plaintiff Geiser, are each twenty-
five feet north and distant from the north line and nearest

point of said alley in said block 40; that neither said lot
'A' nor 'B' nor 'C' nor 'D' nor 'E' of said subdivision
of said lots 1 and 2 in said block 40, belonging to these
plaintiffs as aforesaid, is adjacent to or abuts upon said
alley in said block 40; that no one of said lots of said sub-
division belonging to said plaintiffs, to-wit, Lots 'A,' 'B,'
C,' 'D,' and 'E,' is accessible from said alley in said block
40, and no one of said lots 'A,' 'B,' 'C,' 'D,' and 'E,'
aforesaid, has access to said alley, and that not said 'A' nor
'B' nor 'C' nor 'D' nor 'E' of said subdivision of said
lots 1 and 2 in said block 40 is specially benefited in any
sum whatever, or in any manner whatever, by reason of
the grading, curbing, guttering, and paving of said alley
in said block 40, and cannot use or have any use whatever
of said alley in said block 40.

"That said defendant, the city of Lincoln, by its mayor
and council heretofore, to-wit, on or about the 17th day of
April, 1887, passed an ordinance creating alley paving dis-
tricts, and by ordinance passed about April 17, 1887,
therein and thereby ordered the grading, curbing, and
paving of said alley in said block 40; that in pursuance
thereof said alley in said block 40 has been graded, curbed,
and paved, but in no place nor way whatever does said
grading, curbing, or paving of said alley in said block 40
specially benefit the said lots 'A,' 'B,' 'C,' 'D,' and 'E'
of said subdivision of said lots 1 and 2, block 40, belong-
ing as aforesaid to these plaintiffs, nor abut thereon, and is
not adjacent thereto; that thereafter, to-wit on or about the
23d day of October, 1889, the said defendant, the city of
Lincoln, by its mayor and council, passed an ordinance
levying a special tax and assessment to cover the cost of
curbing, grading, and paving said alley in said block 40;
that in said last named ordinance said defendant, the city
of Lincoln, by its mayor and council, adjudged, deter-
mined and established that said lot 'A' of said subdivision
of said lots 1 and 2, block 40 aforesaid had been and was

specially benefited to the amount of $26.97, by reason of the paving of said alley in said block 40; that said lot 'B' of said subdivision had been and was specially benefited by reason of paving said alley in said block 40 to the amount of $26.97; that said 'C' therein, as aforesaid, had been and was specially benefited by reason of the paving of said alley in said block 40 to the amount of $26.97; that said lot 'D' therein as aforesaid had been and was by reason of paving said alley in said block 40 specially benefited to the amount of $42.57, and that said lot 'E' as aforesaid therein was and had been specially benefited by reason of said paving of said alley in said block 40 to the amount of $46.80, and therein and thereby said defendant, the city of Lincoln, by its mayor and council, levied and assessed upon said plaintiffs said lots in said subdivision of said lots 1 and 2 in said block 40 to and towards paying the cost of paving said alley in said block 40 as follows, to-wit:

"Upon lot 'A' therein, belonging to plaintiff Lansing, the sum of $26.97.

"Upon lot 'B' therein, belonging to said plaintiff Lansing, the sum of $26.97.

"Upon lot 'C' therein, belonging to said plaintiff Schoolcraft, the sum of $26.97.

"Upon lot 'D' therein, belonging to said plaintiff Geiser, the sum of $42.57.

"Upon lot 'E' therein, belonging to said plaintiff Lansing, the sum of $46.80.

"The said tax and special assessment being therein alleged to be the exact special benefit to the said lots so assessed by reason of paving said alley in said block 40.

"That said plaintiff Lansing, for himself, alleges that the said special tax and assessment upon his said lots 'A,' 'B,' and 'E,' of said subdivision of said lots 1 and 2 in said block 40, aggregating the sum of $100.14, levied upon his said property for and towards paying the cost of paving

said alley in said block 40; and said plaintiff School-craft, for herself, alleges that said assessment of $26.67 upon her said property above described for paving of said alley in said block 40; and said plaintiff Geiser alleges that said special tax and assessment of $42.57 levied upon her said property above described for cost of paving said alley in said block 40; each plaintiff herein alleges that said assessment upon plaintiff's property as aforesaid is utterly illegal and without any authority whatever, and is in conflict with and in violation of the provisions of law relative to grading, curbing and paving alleys in said city of Lincoln; that said assessment of the property of these plaintiffs for cost of paving said alley in said block 40, in said city as aforesaid, is made upon property not abutting on said alley and the property aforesaid, is made upon property not abutting on said alley; and the property aforesaid of these plaintiffs, to-wit: said lots 'A,' 'B,' 'C,' 'D,' and 'E' of subdivision of lots 1 and 2; block 40, are not specially benefited by the said paving of said alley in said block 40, and said lots belonging to said plaintiffs are not adjacent to said alley aforesaid; that after the passage of said above last mentioned ordinance a duplicate thereof was on said day made and delivered to defendant Elmer B. Stephenson, treasurer of said city as aforesaid, to which said duplicate, the clerk of said city appended a warrant in the usual and due form of law, requiring said treasurer of said city to collect the said pretended special assessment against the said property of these plaintiffs, by distress and sale of the goods and chattels of these plaintiffs, if the said special tax and assessments aforesaid should not be paid on or before the time fixed by said ordinance and law for the same to become delinquent, to-wit, the 12th day of December, 1889; that the said Elmer B. Stephenson, treasurer as aforesaid, is required by law to collect said special taxes, and after the same become delinquent, to-wit, after December 12, 1889, to seize and sell the goods and chattels of

these plaintiffs; and unless restrained by the order of this court, said treasurer, defendant, will levy upon the goods and chattels of these plaintiffs, and collect said illegal and void special taxes and assessments aforesaid, and these plaintiffs will have no remedy or right of action whatever against said treasurer for damages therefor, for the reason that said warrant is by law made a full and complete justification to said treasurer in any action brought to recover damages; that by the act of 1889, aforesaid, all special assessments are made a lien upon the real estate assessed, and if said defendant Stephenson, treasurer aforesaid, does not by distress and sale of the said personalty of these plaintiffs, collect said pretended but illegal and void special assessments and taxes aforesaid, then the same are a lien upon said lots aforesaid, belonging to these plaintiffs; and in case said realty is sold for such assessments, a cloud will be cast upon the title of these plaintiffs thereto, and the value thereof will be depreciated; that unless said defendant the city treasurer is restrained by the order of this court he will report the said assessments and taxes to the treasurer of Lancaster county as delinquent, and thereupon said real estate of these plaintiffs aforesaid will be advertised and sold for such pretended but illegal and void special assessments, as is by law required to be done in the case of assessments properly made, and thus a cloud will be cast on the title of plaintiffs to said above described lots, and their value will severally be depreciated; that these plaintiffs have no adequate remedy at law for the wrongs and injuries hereinbefore set forth.

"Wherefore these plaintiffs pray that the defendants be required to answer the petition of these plaintiffs that a temporary injunction be granted by this court, restraining said defendants, their agents and servants, from proceeding in any way whatever to collect said pretended special taxes and assessments aforesaid, and that upon final hearing hereof it be ordered, adjudged, and decreed that the

Lansing v. City of Lincoln.

said special tax and assessment against the above described property of each of these plaintiffs for cost of paving said alley in said block 40, are unauthorized, illegal, and wholly void ; that the defendant, the city of Lincoln, through its agents, be required to annul and cancel the said pretended special taxes and assessments aforesaid ; that the defendants, their agents and servants, and each of them, be perpetually enjoined and restrained by the order of this court from collecting said pretended assessments and special taxes aforesaid, and from taking any steps whatever for the enforcement or foreclosure of a lien on any of said above described lots belonging to these plaintiffs, by virtue of said pretended special taxes and assessments, and for such other, further, and general relief as equity may grant, and that plaintiffs may have and recover their costs of this suit."

The following is a plat of the lots:

The answer of the defendant is as follows:

"Come now the said defendants, the city of Lincoln and Elmer B. Stephenson, and for answer to plaintiff's petition filed herein:

"First—Admit all the allegations of paragraphs 1, 2, 3, 4, and 5, of said petition.

"Second—Admit all the allegations of paragraph 6 of said petition except the allegation that said. lots 'A,'. 'B,' 'C,' 'D,' and 'E,' are not specially benefited in any sum whatever, or in any manner, by the grading, curbing, guttering, and paving of said alley in said block 40, which allegation defendants deny.

"Third—Defendants deny each and every other allegation in the said petition contained.

"Fourth—And for a further answer and defense to the said petition these defendants show to the court, that on or about the 9th day of April, 1887, the mayor and council of the city of Lincoln duly passed an ordinance creating paving district number 2, in the city of Lincoln, and on or about the 6th day of June, 1887, an ordinance amendatory to the said ordinance was duly passed and approved. Copies of the said ordinance and amended ordinance are hereto attached marked Exhibits 'A' and 'B' respectively, and made a part of this answer.

"Fifth—That said ordinances were passed and said district number 2 created under and by virtue of an act to incorporate cities of the first class having less than 60,000 inhabitants, and regulating their duties, powers, and government, approved March 25, 1887.

"Sixth—That subdivision LXIII of section 68 of said act provided, among other things, as follows: 'The council shall have power to open, extend, widen, narrow, grade, curb, gutter, and pave, or otherwise improve and keep in good repair, or cause the same to be done in any manner they may deem proper, any street, avenue, or alley within the limits of the city, * * * and to defray the

cost and expense of such improvements or any of them
the mayor and council shall have power and authority
to levy and collect special taxes and assessments upon the
lots and pieces of ground adjacent to, or abutting upon the
street, avenue, alley, or sidewalk thus in whole or in part
opened, widened, curbed, or repaired, or which may be
specially benefited by any of said improvements. The
mayor and council of any city governed by this act shall
have power to pave, repair, or macadam any street, or part
thereof, in any city, and for that purpose to create suitable
paving districts which shall be consecutively numbered.
The cost of paving, macadamizing, or preparing the streets
and alleys within any paving district, except the intersec-
tions of streets and space opposite alleys within such district,
shall be assessed upon the lots and lands specially benefited
thereby in such district in proportion to such benefits, to
be determined by the mayor and council under the provis-
ions of this act. The word ' lot ' as in that act used, shall
be taken to mean a lot as described and designated upon
the recorded plat of any such city, and in case there is no
recorded plat of any such city, it shall mean a lot as de-
scribed and designated upon any generally recognized map
of such city. The word 'land' shall mean any sub-
vidided real estate; *Provided*, That if the lots and real
estate abutting upon that part of the street ordered paved,
repaved, or macadamized, as shown upon any such recorded
plat or map, are not of uniform depth, or if for any other
reason it shall appear just and proper to the mayor and
council, the mayor and council are authorized and empow-
ered to determine and establish the depth to which the real
estate shall be charged and assessed with the cost of im-
provement, which shall be determined and established ac-
cording to the benefits accruing to the property by reason
of the improvement. Real estate may be so charged and
assessed to a greater depth than the depth of the lots as
shown upon any such plat or map.'

" Seventh—That the lots and real estate in said paving district No. 2 were and are not of uniform depth.

" Eighth—That the mayor and council in the ordinance creating paving district No. 2, fixed the depth to which the real estate shall be charged and assessed with the cost of paving in said district at 150 feet on each side of the street, avenue, or alley to be improved.

"Ninth—That on the 18th day of April, 1887, the mayor and council passed an ordinance ordering the paving of streets and alleys in paving district No. 2, a copy of which ordinance is hereto attached marked Exhibit 'C' and made a part of this answer, that in pursuance of said last named ordinance, the board of public works duly advertised for bids for doing said work and duly entered into contract for the same and the said work was duly completed and the cost reported to the mayor and council as required by law.

" Tenth—That at the time said ordinances were passed and approved, and at the time said contract for paving the alleys in said district No. 2 was entered into and the said paving begun, the said city of Lincoln was governed by the provisions of the act of March, 1887, heretofore described.

" Eleventh—That after the completion of said paving of alleys in said district No. 2, and after the cost of said improvements had been duly reported to the mayor and council as required by law, the said council, after making due advertisement of the time and purpose, met as a board of equalization, for the purpose of equalizing and apportioning the cost of said work and improvement upon the several lots in the said district; that said meeting was held on the 15th and 16th days of October, 1889, and the cost of said improvement in said district No. 2 was duly apportioned upon the several lots in said district, in accordance with benefits as the same were determined by such board of equalization as provided by law.

" Twelfth—That the sum so apportioned and charged

upon the several lots in said district was duly reported to the mayor and council, and said sums were on or about the 22d day of October, 1889, duly and legally levied and assessed upon the several lots in said district by ordinance of said date, a copy of so much of said ordinance as is necessary to show the basis of the said assessment, and the sums so levied upon the lots of the plaintiffs is hereto attached marked 'Exhibit D,' and made a part of this answer.

"Thirteenth—That the basis of the assessment of said cost is shown by the resolution of the mayor and council hereto attached, marked 'Exhibit F,' and made a part of this answer.

"Fourteenth—That neither of said plaintiffs, nor did any one in their behalf, ever appear before the said board of equalization, or the said mayor and council before said tax was levied, and protest against the same, or complain that said assessment was illegal, inequitable, or unjust.

"Fifteenth—That said assessment was duly and regularly made as provided by law, and that the same is a fair and just apportionment of the cost of said improvement upon the lots benefited, and that plaintiff is now estopped and barred by law from questioning the said apportionment and assessment.

"Sixteenth—That said lots of the plaintiffs are within 150 feet of the alley paved, and within the limit fixed by ordinance as the depth to which lots should be assessed in said district.

"Seventeenth—That it was determined by the city council, sitting as a board of equalization, that the several lots in each block wherein paving of alleys was done were benefited to the whole amount of the cost of the improvement done in that block, as shown by the resolution hereto attached ; and the plat showing the location of the several lots in said block 40 and the amount of tax assessed upon is hereto attached, marked 'Exhibit E,' and made a part of this answer."

· The reply is a general denial.

On the trial of the cause the court found the issues in favor of the defendant and dismissed the action.

Lots 1 and 2 in block 40, in the city of Lincoln, were each originally fifty feet wide and 142 feet in length. The front is on P street and they run south to the alley. These lots are subdivided, lot 'F,' twenty-five feet wide, being cut off from the south end of lots 1 and 2. The remainder of these lots as subdivided are known as lots 'A,' 'B,' ' C,' ' D,' and ' E.' In determining the amount of assessment for benefits derived by these several subdivided lots, for paving the alley, the mode adopted was to divide the ground between the alley and the street into six parts and to charge thereon one-half the cost of paving. The first sixth was charged one-third of half the cost, the next sixth one-fifth; the next one-sixth; the remaining three subdivisions were charged one-tenth each.

The case of *Lamaster v. City of Lincoln* involves the same question as that of *Lansing et al. v. City of Lincoln.* The cases were tried together upon the same evidence and this decision will cover both cases.

Subdivision 63 of section 68, chap. 13a, of Compiled Statutes 1867, provides that " The council shall have power to open, extend, widen, narrow, grade, curb, gutter, and pave, or otherwise improve and keep in good repair, or cause the same to be done in any manner they may deem proper, any street, avenue, or alley within the limits of the city, and may grade partially or to the established grade, or park, or otherwise improve any width or part of any such street, avenue or alley, and may also construct and repair, or cause and compel the construction and repair of sidewalks in such city, of such material, and in such manner as they may deem proper and necessary, and to defray the cost and expense of such improvements, or any of them the mayor and council of such city shall have power and authority to levy and collect special taxes and assessments

upon the lots and pieces of ground adjacent to or abutting upon the street, avenue, alley, or sidewalk thus in whole or in part opened, widened, curbed and guttered, graded, parked, extended, constructed, or otherwise improved or repaired, or which may be specially benefited by any of said improvements; *Provided,* That the above provisions shall not apply to ordinary repairs of streets or alleys, and one-half of the expense of bringing streets, avenues, alleys, or parts thereof to the established grade shall be paid out of the general or road fund of the city. * * * The provisions of this section in regard to the depth to which the real estate may be charged and assessed shall apply to all special taxes that may be levied, in proportion to the foot front in cities governed by this act."

It is claimed by the appellant that in paving the alley in block 40, alongside of said subdivided lot "F" in said block, it was not assessed by the front foot but by the arbitrary rule of percentages of the cost. In this it is claimed the mayor and council had exceeded their power in levying the assessments complained of.

In support of this proposition the case of *Hanscom v. City of Omaha,* 11 Neb., 37 is cited. In that case the mayor and council of the city of Omaha divided the city into two sewer districts, one district being about two and a half miles in length by three-fourths of a mile in width. Contracts were thereupon let for the construction of a main sewer in the channel of a creek in said district at a cost exceeding $30,000, and assessed all the real estate in the district for its payment. The court held that special assessments could only be levied upon property specially benefited and only to the extent of the benefits. In that case there was no attempt to discriminate as to benefits between lots abutting on or specially benefited by the construction of the sewer and those which were high and dry and received but little if any benefit from such construction. In other words, the assessment was not made according to the

special benefits on the property assessed and hence was prohibited by the constitution.

While the improvement and paving of an alley is a special benefit to the lots abutting thereon, it does not follow that portions of lots somewhat remote from the alley do not also receive benefits from the improvement.   As originally laid out, lots extend from the street to the alley, and necessarily one-half the cost of paving the alley opposite each lot is assessed upon the lot.   If the lot is subdivided, the cost is still to be borne by the lot, the mode of apportionment to be based upon some rule that will do justice to the several owners of the subdivided lot.   The question as to what constitutes a just and fair proportion of the expense thus incurred is one of fact to be determined from the evidence.   The rule adopted by the city council in apportioning the assessment, seems to have been framed after a due consideration of the rights of all the lot owners, and appears to be equitable and just and is approved.

It is unnecessary to consider the other proposition of the answer, that the asssessment made by the city council is conclusive, unless appealed from, and as the authorities, *pro* and *con*, are not cited in the briefs it will not be discussed.

The finding in this case seems to be just and equitable and based upon the testimony, and there is no equity in the plaintiffs' petition, and the judgment of the court below is

AFFIRMED.

THE other judges concur.